# CASES

### DETERMINED IN THE

## SUPREME COURT OF JUDICATURE

#### OF THE

## STATE OF VERMONT.

---

## FRANKLIN COUNTY, JUNE ADJOURNED TERM, A. D. 1802.

---

*JONATHAN ROBINSON*, Chief Judge.
*ROYALL TYLER*, } *Assistant Judges.*
*STEPHEN JACOB*, }

---

## *Ex parte* HALL.

*A writ of protection ad testificandum suspends all civil process as against the subject of it whilst coming to and attending upon Court, with a reasonable time for the witness to return home after the rising of the Court.*

*HABEAS CORPUS cum causa,* returnable *coram nobis.*

The writ was directed to *Nathan Green,* constable of *St. Albans,* commanding him to have forthwith the body of *Abijah Hall,* said to be a prisoner in his custody, with the cause of his detention or imprisonment.

The officer brought the body of *Hall* into Court, and returned as the cause of his detention,

That as constable of *St. Albans* he arrested and now detains the body of *Hall* upon a writ of attachment signed by *Hubbard Barlow*, one of the Justices of the Peace of the County of *Franklin*, (having legal and sufficient authority to sign the same,) and directed to him as constable, to serve and return according to law, which writ was at the suit of *Hall, Crane &* *Pomroy*, merchants, trading in company under that firm, who demanded in the writ of *Abijah Hall* the sum of six hundred dollars, due on balance of book accounts, and which writ was made returnable to *Franklin* County Court, next to be holden at *St. Albans*, on the second *Monday* of *November*, 1802.

*Abijah Hall* now moved for his discharge, stating that he is illegally imprisoned.

For that he is an inhabitant of *Platsburgh*, in the State of *New-York*, beyond the process of this Court, where he hath long resided under the protection of the laws of said State. That he came into the State of *Vermont* since the commencement of the present term of the Court, under the protection of the Court, having with him, ready to be shewn in Court, a writ of protection issued by the order, and signed by the Clerk of the Court, dated within the term, and made conformably to law ; which writ states, that the personal appearance of the now prisoner is necessary for the furtherance of justice to be had in Court, to give testimony in the cause or action wherein *Zerah Willoughby* is plaintiff, and *Nathan Kinsley*, junior, defendant, on the part of the defendant ; and commands all civil officers and others to abstain from executing or serving any civil process upon the body of the now

prisoner on his way to the Court, during his attend-
ance on Court, and for a reasonable time for him to
return to his domicil after the rising of said Court.
That the arrest in the return made, and by which he
is now holden in custody, was made during the ope-
ration, and in disobedience to said writ of protection,
against law and in contempt of the Court.

The officer, confessing the said writ of protection,
in reply says, that the said *Abijah Hall* ought not to
be discharged from his custody, because he says he
is not detained contrary to the true intent and mean-
ing of said writ of protection, or the law of the land;
for that the cause or action of *Willoughby* v. *Kinsley*,
to testify concerning which the said writ of protec-
tion was granted and issued, was, on the 19th day of
*June*, being the fifth day of this present term of the
Court, by order of Court and agreement of the par-
ties, continued to be heard and tried at the next term
of the Court; of all which the said *Abijah* was conu-
sant: and so the business and matters for which the
said writ of protection was granted and issued, as they
related to the said *Abijah Hall*, were fully completed
and ended: and according to the true intent and
meaning of the said writ of protection, the term of
this Court, as it related to him the said *Abijah*, had
terminated. And for that the said *Abijah Hall*, on
the said 19th day of *June*, instead of proceeding di-
rectly to his domicil in the reasonable time allowed
him by said writ, went in an opposite course from his
habitation and home in the State of *New-York*, twen-
ty miles further from *St. Albans*, into the interior of
this State, to wit, to the town of *Cambridge*, in the

County of *Franklin*, where he loitered or went about his private business until the 21st day of *June*, being the seventh day of the term, when he returned to *St. Albans*, and there loitered or went about his private business until the 22d day of *June*, when the arrest under which he is now detained was made ; and so he says the said *Abijah Hall* was not, at the time of said arrest, within the protection of the Court under said writ of protection, in that he did not depart home in a reasonable time after the said cause was continued, and after the matters and business for him the said *Abijah Hall* as a witness to do, were fully completed and ended.

The prisoner rejoins, that at the time of said arrest he was within the protection of the Court under said writ of protection; for, protesting that the continuance of the cause of *Willoughby* v. *Kinsley*, according to the true intent and meaning of said writ of protection, was not the rising of the Court, he says, that on the said 19th day of *June*, being the fifth day of the term, immediately after an imparlance had been granted in the case of *Willoughby* v. *Kinsley*, he proceeded towards his domicil in *Platsburgh* aforesaid : but when he came to his boat on the shore of Lake *Champlain*, he discovered the weather to be so tempestuous it was impossible to cross the same on his way home without manifest jeopardy of his life: that the weather continuing tempestuous, it became necessary for him to seek some shelter from the storm until the wind should abate; and he the prisoner, being without money or other means to sustain and support himself in *St. Albans*, went to a near relation's in *Cambridge*

aforesaid, where he might subsist upon the hospitality
of his friends. That on the same 19th day of *June*,
he was at said *Cambridge* arrested at the suit of one
*Hawley*, and brought to *St. Albans* under such arrest,
where he continued under said arrest until the even-
ing of the 21st of *June*, he procured and gave bail in
the suit of *Hawley*. That on the 22d day of *June* he
again attempted to cross said Lake in his passage
home, when he was arrested upon the writ for which
he is now in custody. And so he says, that if in any
wise he hath departed from the protection of the
Court in their writ of protection extended, it has been
occasioned by the act of Providence, which the law
announceth shall injure no man.

Upon traverse of this rejoinder by the officer, the
following witnesses were sworn :

——— *Dunkelly*, Esquire ; who testified, that on
*Friday*, the 18th of *June*, he came from the *Grand
Isle* in a boat with his wife, *Nathan Kinsley* and *Abi-
jah Hall*, to *St. Albans*. *Kinsley* had engaged to bring
*Hall* over, and to return him home. That on the
*Saturday* following, after the cause of *Willoughby* v.
*Kinsley* was continued, they all went to the lake
shore to embark ; but the waters were so rough and
the wind so violent, that it was judged by the party
and others present, that the passage to the *Grand Isle*
could not be attempted without risk of lives. That
*Abijah Hall* appeared anxious to venture; and when
the witness declined, he consulted him respecting his
going to his brother's in *Cambridge*, and spending the
sabbath, saying he had no money to bear his ex-

penses in *St. Albans*. That he did not see *Hall* again until *Monday*, when he was in custody of a deputy-sheriff at the suit of one *Hawley*. On *Monday* the lake was calm, but they waited until *Hall* could procure bail, which he effected late the same evening. On *Tuesday*, as they were preparing to embark, *Hall* was again arrested at the suit of *Hall, Crane & Pomroy*.

*Daniel Kinsley*, junior, confirmed the testimony of *Dunkelly*.

*Thaddeus Rice*, counsel for the officer, contended, that the expression in the writ of protection, until a reasonable time after the rising of the Court, must intend until the disposal of the cause for the term in which the prisoner was protected as a witness. That it was so understood by *Hall* himself, who, upon the termination of the suit for the term, went immediately towards home; but being frightened by the gale, he went directly from his course nearly twenty miles into the interior of the State. That it was his duty, if the wind was high, to have tarried on the lake shore until it was calm. In a word, the writ protected him in his most direct course to the Court, whilst there until the business for which he was sent for was concluded, and then in his direct course to the place from whence he came. If he met with an impediment he should have tarried where he was impeded, and at least looked towards the path of his duty. That the writ of protection goes to abridge the rights of honest creditors, and should be strictly construed.

The Court declined hearing arguments from the opposing counsel.

*Per Curiam.* Testimony *viva voce* is so much to be preferred to that received through the medium of a deposition, that the Court are inclined to favour the personal appearance of witnesses.

The writ of protection will therefore always receive a liberal construction in favour of the witness covered by it.

An inhabitant of another State has a right to prefer having his controversies settled by the Courts in his own government. He must not be drawn into this State under the ostensible protection of this Court, and be then exposed to be entangled in litigation far from his home, which must ever be attended with augmented expense. For the furtherance of justice and the dignity of the Court, it is better that the plain letter of the writ should be preferred, than any nice construction which the ingenuity of counsel may suggest.

The Court consider, that the writ of protection *ad testificandum* suspends all civil process against the subject of it, *while coming to and attending upon Court, with a reasonable time for the witness to return home after the rising of the Court.*

If the doctrine should prevail, that the writ of protection ceases to operate after an imparlance awarded, or even after final judgment, it would promote litigation ; for the termination of the suit might not always be known to the witness. Arrests would follow ; and though the failing to prove the knowledge of the termination in the suit would eventually liberate him on

*habeas corpus*, yet the litigating the *scienter* would involve the witness in the very litigation which was intended to have been avoided by the writ of protection.

Ex parte Hall.

The Court are fully in opinion, that the prisoner must be discharged.

Let judgment be entered, that the prisoner is discharged, and the constable be in mercy for his contempt of the Court.

*Thaddeus Rice*, for the officer.

*William C. Harrington* and *Bates Turner*, for the prisoner.